1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KGV EASY LEASING CORPORATION, a corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>KATHLEEN SEBELIUS,  Secretary of the United States Department of Health and Human Services,<br><br>        Defendant. | No. CV 08-2350 DSF (RZx)<br><br><u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u> |

        This matter having come on for hearing on June 16, 2009, and the Court having considered the pleadings, memoranda of points and authorities, administrative record, and the oral argument at the hearing, it finds as follows:

FINDINGS OF FACT

        A.        <u>Statutory and Regulatory Background</u>

        1.        The Medicare Act, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq., pays for covered medical care provided to eligible aged and disabled persons.  During the time at issue, the statute consisted of three main parts.

1

2.     Part B provides supplementary medical insurance for covered medical services, such as diagnostic testing, or covered medical supplies, such as durable medical equipment (DME), prosthetics and orthotics.  See 42 U.S.C. §§ 1395j to 1395w-4, 42 C.F.R. Part 410.

3.     This case involves Part B of the Medicare Act because at all relevant times, Plaintiff KGV was designated by Medicare as an Independent Diagnostic Testing Facility or "IDTF."  An IDTF is an entity independent of a hospital or physician's office in which diagnostic tests are performed by licensed, certified non-physician personnel under appropriate physician supervision.  42 C.F.R. § 410.33(a).  The purpose of IDTFs is to furnish tests; such entities do not directly use the test results to treat a beneficiary.  See 62 Fed. Reg. 59048, 59070-74 (October 31, 1997).

4.     In administering Part B, Medicare acts through private fiscal agents called carriers.  42 U.S.C. § 1395u; 42 C.F.R. Part 421, Subparts A and C, and 42 C.F.R. § 421.5(b).  Carriers are private entities who contract with the Secretary of the U.S. Department of Health and Human Services (the "Secretary") and perform a variety of functions.  These functions include making coverage determinations in accordance with the Medicare Act, applicable regulations, Medicare Part B Supplier Manual, or other agency guidance; determining reimbursement rates and allowable payments; conducting audits of the claims submitted for payment; and rejecting or adjusting payment requests.  On receipt of a claim for services rendered, the carrier pays the Medicare beneficiary on the basis of an itemized bill or pays the Medicare supplier on the basis of an assignment of benefits executed by the beneficiary.  42 U.S.C. § 1395u(b)(3)(B).  These carrier functions are prescribed by regulation.  42 C.F.R. § 421.200.

5.     As with private medical insurance programs, Medicare has conditions and limitations on the coverage of services and items.  For Part B, the statute and implementing regulations set forth these conditions, exclude certain services and

1   items from coverage, and otherwise specify various limitations.  42 U.S.C.
2   §§ 1395k, 1395l, 1395x(s); <u>see also</u> 42 U.S.C. § 1395y(a)(2)-(16); 42 C.F.R. §
3   411.15(a)-(j).

4          6.     For Medicare to cover an item or service, the services rendered must be
5   reasonable and necessary for the diagnosis or treatment of illness or injury or to
6   improve the functioning of a malformed body member.  42 U.S.C.§
7   1395y(a)(1)(A).

8          7.     Medicare payment cannot be made unless the party seeking payment
9   furnishes the Secretary with the information he or she may require to substantiate
10   medical necessity.  42 U.S.C. § 1395l(e); 42 C.F.R. § 424.5(a)(6).  Congress has
11   given the Secretary the authority to prescribe the regulations for determining
12   entitlement to benefits under part A or part B.  42 U.S.C. § 1395ff(a).

13         8.     The medical documentation requirements that IDTFs must meet to be
14   eligible for reimbursement for services to Medicare beneficiaries are published at
15   42 C.F.R. § 410.33.

16         9.     The Medicare Act also provides for a waiver of liability for a supplier
17   when the supplier "did not know, and could not reasonably have been expected to
18   know, that payment would not be made for such services."  42 U.S.C. § 1395pp(a).
19   The Act allows recovery by a supplier whenever it is determined that the supplier
20   is "without fault" in incurring the denial of payment.  42 U.S.C. § 1395gg(b)(1).

21         10.    A Medicare supplier dissatisfied with a reimbursement decision by the
22   carrier must present its claim through the designated administrative appeals process
23   and exhaust the administrative remedies available to it.  42 U.S.C. § 1395ff(b)
24   (incorporating by reference 42 U.S.C. § 405(b)); <u>see also</u>, 42 C.F.R. § 405.801 <u>et</u>
25   <u>seq</u>. (describing the administrative appeals process for Part B).

26         11.    Once this administrative process is exhausted, judicial review of the
27   Secretary's "final decision" is available as provided in 42 U.S.C. § 405(g)
28   (incorporated by reference in 42 U.S.C. § 1395ff(b)(1)(a)).

1    B.    Procedural History

2        12.    At all relevant times, plaintiff KGV Easy Leasing Corporation

3    ("KGV") was designated by Medicare as an IDTF.

4        13.    Between November 27, 2002 and January 18, 2003, KGV billed the

5    Medicare carrier, National Heritage Insurance Company ("NHIC" or "carrier") for

6    providing mobile diagnostic testing services to a number of Medicare beneficiaries.

7    See CAR [1] at 3543-4; ACAR at 363-4; see also CAR at 3481; ACAR at 301

8    (description of tests per billing codes).[2]  KGV's claims were denied by NHIC.

9        14.    KGV requested a reconsideration of 30 of these claims by a Carrier

10   Hearing Officer.  In a decision dated August 6, 2003, the Officer disagreed with

11   NHIC's basis for denying the claims, but concluded that the claims were excluded

12   from Medicare coverage because they were not medically reasonable and

13   necessary.  CAR at 3543-4; ACAR at 363-4.

14       15.    The procedural history of KGV's appeal of the denial of the 30 claims

15   includes two Administrative Law Judge ("ALJ") decisions favorable to KGV, both

16   of which were reviewed, reversed, and remanded by the Medicare Appeals Council

17   ("MAC").  CAR at 3436 (first MAC remand), 3484-5 (first favorable ALJ

18   decision); ACAR at 304; CAR at 3441 (first MAC remand); CAR at 3423 (second

19

20       [1] The Certified Administrative Record is cited as "CAR" and followed by a
21   citation to the relevant page number in the administrative record.  For example,
     "CAR at 3" refers to page 3 of the Certified Administrative Record.  The Abridged
22   Certified Administrative Record is cited as "ACAR" and followed by a citation to
     the relevant page number.  A small number of CAR cites are not accompanied by
23   parallel ACAR cites because the cited portions of the CAR are not contained in the
     ACAR.  In those cases, the parties attached the CAR pages cited to their briefs
24   pursuant to the Court's March 30, 2009 "Order Re Abridged Certified
     Administrative Record."
25
         [2] The thirty claims KGV billed to Medicare were for eight different types of
26   diagnostic tests, each with its own billing, or "CPT," code.  CAR at 3481; ACAR
     at 301.  Five of the tests were various "nerve conduction" tests.  Id.  The remaining
27   tests involved diagnostic studies of the gastrocnemius/soleus muscle, which is a
     large muscle in the back of the lower leg (calf), and of arteries in the cranium and
28   around the eye sockets, respectively. Id.

4

1   favorable ALJ decision); ACAR at 288-9; 2935 (second MAC remand).

2       16.     On the final remand, the MAC ordered the ALJ to review individually

3   the documentation and testimony offered by KGV in support of each of its 30

4   claims for payment.  CAR at 2935 (second MAC remand).

5       17.     In a decision dated April 18, 2007, the ALJ issued an opinion adverse

6   to KGV.  CAR at 229-277; ACAR at 229-277.

7       18.     KGV requested that the MAC review the ALJ decision.  The MAC

8   granted review due to an error of law by the ALJ – the ALJ cited to incorrect

9   procedural regulations as governing the Medicare Part B hearing.  See CAR at 3-4;

10  ACAR at 3-4.  However, the MAC ruled that, on the merits, the ALJ's findings of

11  fact were supported by substantial evidence and without legal error.  CAR at 3, 10;

12  ACAR at 3, 10.  Specifically, the MAC affirmed the ALJ's conclusions that: (1)

13  KGV had failed to provide sufficient documentation of medical necessity; (2) the

14  waiver provisions of section 1879 did not apply; and (3) the denial of payment by

15  the carrier of the roughly 1932 uncontested claims was administratively final.

16  CAR at 10; ACAR at 10.

17                          CONCLUSIONS OF LAW

18      19.     This is an action under 42 U.S.C. § 1395ff(b)(1)(a) for judicial review

19  of a final decision by the Secretary.

20      20.     Judicial review of the Secretary's "final decision" must be based

21  solely on the record.  The Secretary's final decision will be disturbed only if the

22  factual findings underlying the decision are not supported by substantial evidence

23  or if the decision fails to apply the correct legal standards.  Tackett v. Apfel, 180

24  F.3d 1094, 1097 (9th Cir. 1999).  The findings of the Secretary as to any fact shall

25  be conclusive and must be upheld if supported by substantial evidence.  42 U.S.C.

26  § 405(g); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Additionally, if

27  the evidence can rationally be interpreted in more than one way, the court must

28  uphold the Secretary's decision.  Mayes, 276 F.3d at 459.  Because an agency's

action is presumed valid, the burden is on the party challenging the agency's action to show that it is arbitrary and capricious.  <u>Short Haul Survival Comm. v. United States</u>, 572 F.2d 240, 244 (9th Cir. 1978).

21.     Congress vested the Secretary with broad discretion to determine what information is required in order to establish medical necessity as a condition of payment.  <u>See</u> <u>Maximum Comfort, Inc. v. Sec'y of Health and Human Servs.</u>, 512 F.3d 1081 (9th Cir. 2007).  The medical documentation requirements that IDTFs must meet to be eligible for reimbursement for services to Medicare beneficiaries are published at 42 C.F.R. § 410.33.

22.     In support of its claim for payment, KGV submitted copies of its preprinted physician order forms.  However, these forms had numerous deficiencies and did not conform to the requirements of 42 C.F.R. § 410.33(d).  For example, very few of the forms contained the signature of the ordering physician. Others were either unsigned, partially signed, or signed (or initialed) by a person that is not identified in the record.  <u>See</u> CAR at 247, 250, 257, 258-9, 261-3, 4034-93; ACAR at 247, 250, 257, 258-9, 261-3.

23.     42 C.F.R. § 410.33(d) further requires that the tests performed be used "in the management of the beneficiary's specific medical problem."  § 410.33(d). However, again, the preprinted order forms were deficient.  In some cases, the forms showed that several physicians were treating the beneficiary for the same or similar conditions.  In other cases, there was no indication that the referring physician was treating the patient.  CAR at 6, 4034-93; ACAR at 6.

24.     KGV never presented medical records or witness testimony, or submitted signed declarations from the five physicians named on the order forms attesting to the accuracy of the information allegedly contained on those forms, or submitted any other form of evidence, that would verify that the information allegedly contained on its order forms establishes medical necessity.

25.     Given these facts, the ALJ reasonably concluded that KGV failed to

1
2

meet the medical documentation requirements that IDTFs must meet to be eligible for reimbursement for services to Medicare beneficiaries.  <u>See</u> 42 C.F.R. § 410.33.[3]

3
4
5
6
7
8

26.    If services are not medically necessary, Medicare payment may still be made pursuant to a "waiver" provision contained in section 1879 of the Social Security Act, 42 U.S.C. § 1395pp.  Medicare payment may be made if "neither the beneficiary, nor the provider/supplier knew or reasonably could have been expected to know that such services would be excluded from Medicare coverage." 42 U.S.C. § 1395pp.

9
10
11
12
13
14
15
16
17

27.    As a Medicare supplier, KGV was charged both with knowledge of those regulations and with the understanding that Medicare would not provide reimbursement for services that are not demonstrably medically necessary and otherwise properly documented.  <u>See</u>, <u>e.g.</u>, <u>Federal Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380, 384-85 (1947) (the appearance of rules and regulations in the Federal Register gives legal notice of their contents); <u>Maximum Comfort, Inc. v. Sec'y of Health and Human Servs.</u>, 512 F.3d 1081, 1088 (9th Cir. 2007) (supplier charged with constructive notice of publications from the Medicare contractor setting forth documentation requirements for suppliers of durable medical equipment).

18
19
20
21
22
23
24

28.    In this case, the medical documentation requirements for IDTFs are contained in federal regulations that took effect on January 1, 1998 – nearly four years before the earliest of the claims in question here.  <u>See</u> 62 Fed. Reg. 59048 (October 31, 1997).  Further, given the previously discussed deficiencies and inconsistencies in the documentation provided by KGV, that documentation clearly does not satisfy the regulatory requirements.  Therefore, KGV is not entitled to a waiver under section 1879 of the Social Security Act, 42 U.S.C. § 1395pp.

25
26

29.    KGV asserts that it had an oral agreement with NHIC to treat the 30

27
28

[3] KGV argues that it was prohibited by the Privacy Act from obtaining copies of beneficiaries' medical records.  However, KGV's argument lacks merit; the Privacy Act applies only to records kept by agencies of the federal government, not private physicians.  5 U.S.C. § 552a(f) (defining "agency").

7

1  claims it appealed as "test claims," which would then be determinative of the

2  remainder of the denied claims.  The Court does not reach the issue of whether

3  KGV preserved its right to administrative and judicial review of the denial of the

4  remainder of the claims because the Court has sustained the Secretary's denial with

5  respect to the "test claims."  Even if review of the remainder of the claims were

6  preserved, KGV would not be entitled to reimbursement for those claims.

7                                    <u>CONCLUSION</u>

8          For the foregoing reasons, the Secretary's final decision in this matter is

9  without legal error and supported by substantial evidence.  Therefore, it is

10  sustained by this Court.

11          DATED: August 4, 2009.

12

13                                               _____
                                                 DALE S. FISCHER
14                                               UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28